SCHWARTZ, Judge.
The trial judge ordered this case transferred from Dade to Leon County. The primary issue presented on this appeal of that order is whether the Florida Insurance Guaranty Association (FIGA) is a governmental entity entitled to the venue privilege of being sued only at the site of its headquarters. We hold it is not and that the order may not be otherwise sustained as a proper transfer under Section 47.122, Florida Statutes (1977). We therefore reverse the order under review.
The appellant, Kuvin, Klingensmith & Lewis, P.A., a Miami law firm, sued the FIGA in Dade County Circuit Court. The action sought to recover for legal services rendered in a large number of cases to Manchester Insurance and Indemnity Co., a liability insurer which thereafter became insolvent and which was succeeded by FIGA pursuant to the provisions of the statute which created it. Sections 631.50 et seq., Florida Statutes (1977). FIGA moved both to dismiss the complaint and to transfer the action to Leon County. The trial court granted the latter motion and ordered the cause transferred to the Second Circuit. This “interlocutory appeal” to review that non-final order “concerning venue,” pursuant to Fla.R.App.P. 9.130(a)(3)(A), followed.
In support of the order under review, the FIGA primarily contends that it is a governmental subdivision, that is, an agency of the state, subject to the Florida common law rule most recently expressed in Carlile v. Game & Fresh Water Fish Commission, 354 So.2d 362, 363-364 (Fla.1977):
“. . that venue in civil actions brought against the state or one of its agencies or subdivisions, absent waiver or exception, properly lies in the county where the state, agency, or subdivision, maintains its principal headquarters. Smith v. Williams, 160 Fla. 580, 35 So.2d 844 (1948) and Ringling Brothers — Barnum and Bailey Combined Shows v. State, 295 So.2d 314 (Fla. 1st DCA 1974).”
We do not agree that the FIGA may properly be so regarded.
*216 The general purposes and functions of the FIGA were outlined by the supreme court in O’Malley v. Florida Insurance Guaranty Ass’n, 257 So.2d 9, 10, 11 (Fla.1971) which upheld the constitutionality of its statutory foundation:
“Ch. 70-20 created the Florida Insurance Guaranty Association, Inc., a non-profit corporation, as the mechanism for the payment of covered claims under certain classes of insurance policies of insurers which have become insolvent.
To raise the funds necessary to administer and pay covered claims and other expenses, the statute provides for an assessment on certain casualty insurers doing business in the state and selling the class of insurance policies involved.”
* * * * * *
“The Guaranty Association is a public or quasi-public corporation. It is a legislatively declared ‘mechanism’ to aid and benefit numerous citizens many of whom comply with state requirements in obtaining casualty and other insurance coverage for themselves and have suffered loss of the insurance protection they obtained because of the insolvency of their insurors.”
Under the present statutory scheme, the FIGA is a non-profit corporation composed exclusively of private insurance companies which transact business in Florida. § 631.-55. Its “governing committee” contains no public officials or employees but consists entirely of persons recommended to the insurance department by the member insurers. § 631.56(1). In fact, none of those who work for the FIGA are general state employees; they either remain employees of the insurance companies, and have their expenses reimbursed by the FIGA, § 631.-56(3), or they are employed directly by the FIGA itself. §§ 631.57(2)(a), 631.57(5). Most importantly, the FIGA is funded entirely and exclusively by assessed contributions from the member companies. § 631.-57(3)(a). By specific statutory prohibition, no tax monies may be involved. § 631.-57(3)(d) provides:
“No state funds of any kind shall be allocated or paid to said association or any of its accounts.”
As the court was careful to point out in O’Malley, supra, at 257 So.2d 13:
“Here there is no question but that the funds to pay claims of insureds of insolvent insurers are not state revenues but are treated throughout as trust funds separate and apart from general tax funds or other state revenue.”
In our view, the total non-involvement of public funds is the most significant factor in the analysis of whether a given entity should be deemed governmental in character for venue purposes. The Garlile case itself, at 354 So.2d 364, states the basis of the venue privilege claimed by the FIGA:
“Such a rule promotes orderly and uniform handling of state litigation and helps to minimize expenditure of public funds and manpower.” [emphasis supplied]
Since the very reason for the privilege thus does not apply to the defendant, neither should the privilege itself. See also Ven-Fuel v. Jacksonville Electric Authority, 332 So.2d 81, 82-83 (Fla. 3d DCA 1975), where this court held:
“The most telling fact appears to us to be that the authority is subject to governmental control of its budget and that tax monies may, if necessary, be used in its operation. When the activity is govern-mentally supervised and the taxpayer is financially interested, the indication is strong that the activity is governmental.” [emphasis supplied]
It seems clear that the FIGA is instead correctly viewed, as § 631.57(l)(b) specifically provides, as an “insurer” of the covered claims of the insolvent carrier in question. As such, it is subject to the same rights, privileges and duties as any other insurance company.[1] See Zinke-Smith, Inc. v. Florida Insurance Guaranty Association, Inc., 304 So.2d 507 (Fla. 4th DCA 1974), *217 cert. denied, 315 So.2d 469 (Fla.1975) (FIGA “insurer” under attorney’s fees statute, Section 627.428); cf. Hartnett v. Riveron, 361 So.2d 749 (Fla. 3d DCA 1978). While it is true that the FIGA, even more than other insurers, is closely regulated by the state, we are cited to no decision, and we have found none, which holds that governmental regulation, no matter how severe, is alone sufficient to convert a business entity into an arm of the government itself.
On the other hand, authority from elsewhere supports our conclusion. In Texas Employers’ Ins. Ass’n v. City of Dallas, 5 S.W.2d 614 (Tex.Civ.App.1928), the court held that although the Texas Employers’ Insurance Association was, like the FIGA, a “public corporation” created entirely by statute, it was properly treated as an insurance company rather than as a “governmental agency to perform governmental functions” so as to be exempt from municipal taxation. At 5 S.W.2d 616, the court stated:
“By creating an insurance bureau, as an agency for the payment of the compensation allowed by the said law, the state did not thereby clothe such agency with governmental functions. Its operating funds are derived from the purely voluntary act of the employers of labor[2] and not from the public revenues levied and collected by the impelling power of government.
Taxes are levied by the state under its sovereign power on the property of the citizen for governmental purposes only, and the money collected is owned by the state and used only for public purposes. No part of the money collected by defendant ever becomes public revenue.”
See also In re Torpedo Dress Corp., 176 Misc. 60, 26 N.Y.S.2d 971, 974-975 (Sup.Ct.1938). We therefore conclude that the order of transfer under review may not be sustained by the governmental privilege asserted by the FIGA.[3]
The appellee contends, however, that the order of transfer should be upheld on the alternative ground that it was properly entered pursuant to Section 47.122, Fla. Stat. (1977), the “forum non conveniens” statute which permits the transfer of actions “[f]or the convenience of the parties or witnesses.” Again, we cannot agree. In the unsworn motion to transfer, the FIGA stated only that the case should be tried in Leon County:
“. . . because the files which are the subject matter of this litigation are required by the Ancillary Receiver of Manchester to be located in Tallahassee, Florida, which is in the Second Judicial Circuit, the headquarters of FIGA as promulgated by the Department of Insurance is located in Tallahassee, Florida, and, in the event that factual testimony is necessary to resolve any or all of the issues in this lawsuit, the Defendant anticipates calling as witnesses, among others, Gene Carruthers, Odell Turner, Helen Hobbs, and William Whitcomb, all of whom reside in or around Tallahassee, Florida.”
Even if this statement had been sworn to, as is required to support such a motion, see Magee v. Liberty Mutual Ins. Co., 366 So.2d 827 (Fla. 4th DCA 1979), it is clear that it does not justify a transfer to Leon County under Section 47.122. The face of the corn- *218 plaint reveals that the plaintiff is a firm of Dade County lawyers suing for personal services which they themselves performed and as to which they would obviously be the primary witnesses. Moreover, there is no dispute that the legal services were rendered and that the cause of action sued upon therefore arose here. Under these circumstances, a change of venue is improper. Velez v. Mell D. Leonard & Associates, Inc., 338 So.2d 896, 897 (Fla. 2d DCA 1976) is determinative:
“Finally, attempts by defendant to support the trial court’s ruling on the doctrine of ‘forum non conveniens’ under Section 47.122, Florida Statutes, are not persuasive. While it is apparent that defendant’s witnesses reside in Orange County, it is just as obvious that the plaintiff’s witnesses are in Hillsborough County. Therefore, defendant’s reliance on England v. Cook, 256 So.2d 403 (Fla. 3d DCA 1972), is misplaced for in England it was clear that no witnesses lived in the transferor forum.”
See also Aquarium Pharmaceuticals, Inc. v. Industrial Pressing & Packaging, Inc., 358 F.Supp. 441, 446 (E.D.Pa.1973) (transfer which “would merely shift the inconvenience from the defendant to the plaintiff” improper); Calva v. American Air Lines, Inc., 177 F.Supp. 238 (D.Minn.1959), and cases cited.
The order under review is reversed and the cause remanded with directions to deny the motion to transfer, and for further proceedings consistent herewith.
Reversed and remanded.

. Absent the governmental privilege, venue was properly laid in Dade County as the county in which the cause of action accrued. § 47.011, Fla.Stat. (1977).

. We think it makes no difference that payments by an insurer to the FIGA are required as a condition of its voluntary act of transacting business in our state. § 631.57.

. Our decision is not uninfluenced by the inconvenience and incongruity which would arise if we ruled otherwise. Since any governmental venue privilege would be applicable no matter what the nature of the cause of action, Carlile v. Game & Fresh Water Fish Commission, supra, the FIGA would be able, at its option, to secure a transfer to Leon County of any claim in which it is joined as the alleged tortfeasor’s insurer or which asserts a first party claim against it under an existing policy. Furthermore, when multiple defendants are involved, only the action as against FIGA would be transferred, with a separate case proceeding against the remaining defendants in the initial forum. State Department of Transportation v. Bromante, 365 So.2d 388 (Fla. 4th DCA 1978). A court should avoid these horribles if it can. Moreover, there is no basis for concluding that the FIGA should be granted any such advantage over solvent carriers, or any greater rights than the defunct company which it succeeds.