## VON STETINA v. FLORIDA MEDICAL CENTER, INC.
Case No. 81-05946 "J"
Seventeenth Judicial Circuit, Broward County
May 28, 1982

Sheldon J. Schlesinger, for plaintiff.

Steven R. Berger, Joel D. Eaton, for defendant.

ROBERT LANCE ANDREWS, Circuit Judge.

The following post-trial motions are pending before the Court:

1.   Defendant, FLORIDA MEDICAL CENTER'S "Motion for Reduction of Verdict, Limitation of Liability and Motion to Alter and/or Amend the Judgment";

2.   Defendant, FLORIDA PATIENT'S COMPENSATION FUND's "Motion to Alter or Amend Judgment";

3.   Plaintiff's Motion for Attorney's Fees:

4.   Defendant, FLORIDA PATIENT'S COMPENSATION FUND's "Motion for Stay of Execution".

The Court has heard oral argument on the motions; it has carefully considered the extensive memoranda filed by the parties; and it has reached the following conclusions:

A.   The constitutionality of §768.54, Fla. Stat. (1981).

Section 768.54 provides generally that all privately owned hospitals must join the "Florida Patient's Compensation Fund", and that if they comply with the statute they "shall not be liable for an amount in excess of $100,000.00 per claim". The statute shifts the obligation to pay any judgment in excess of this amount to the fund, but limits the fund's obligation to pay the judgment (after a lump-sum payment has been made for attorney's fees and costs) to "not more than $100,000.00 per person per year until the claim has been paid in full". To the extent that the statute creates a trust fund in the nature of liability insurance

for the hospital, the Court does not find it constitutionally offensive. To the extent that the statute restricts the plaintiff's right to recover her judgment from the hospital and that fund, however, it violates several fundamental provisions of both the Florida and United States Constitutions when applied to the facts in this case.

After a careful study of the statute, the Court has concluded that it does not contemplate the entry of judgments against the hospital and fund limited to the amounts set forth in the statute; instead, it clearly contemplates that judgments for the full amount of the jury's verdict be entered against the hospital and the fund, and then merely controls the manner in which those judgments are to be paid. That conclusion is compelled by the following portions of the statute: subsection (2)(b); subsection (3)(a); subsection (3)(e). Once it is recognized that the statute imposes no substantive limitation upon the plaintiff's right to judgments in the full amount of her damages, and that the statute merely prevents collection of the judgments except on the terms prescribed by the statute, it is clear that the statute does nothing more than direct this Court how to enforce collection of the judgments. This type of legislative direction is unconstitutional, however, because it impermissibly encroaches upon powers granted exclusively to the judicial branch of our government. It is settled that a trial court with constitutional jurisdiction to render a final judgment has "the inherent power . . . to enforce collection of its judgments". STATE ROAD DEPARTMENT v. BANKERS LIFE & CASUALTY CO., 166 So.2d 234, 235 (Fla. 3rd DCA 1964). It is also settled that "[t]he legislature has no power to prescribe rules regulating the conduct of the Court's business or other matters within the inherent power of the Court to regulate". SYDNEY v. AUBURNDALE CONSTRUCTION CORP., 96 Fla. 688, 119 So. 128, 129 (1928). Since both of these propositions are settled, it is clear that §768.54 is unconstitutional — because it attempts to limit this Court's inherent power to enforce the judgments entered in this case.

The statute also violates both the equal protection and due process clauses of the Florida and United States Constitutions. The "tests" to be applied to the statute in measuring its constitutionality against both of these clauses are essentially the same:

> The test to be used in determining whether an act is violative of the due process clause is whether the statute hears a reasonable relation to a permissible legislative objective and is not discriminatory, arbitrary or oppressive.
>
> . . . .
>
> In order to comply with the requirements of the equal protection clause, statutory classifications must be reasonable and non-

arbitrary, and all persons in the same class must be treated alike. [Citation omitted]. When the difference between those included in a class and those excluded from it bears a substantial relationship to the legislative purpose, the classification does not deny equal protection. [Citation omitted].

LASKY v. STATE FARM INSURANCE CO., 296 So.2d 9, 15, 18 (Fla. 1974). The statute arguably satisfies one minor aspect of these tests: it "bears a reasonable relation to a permissible legislative objective". See CARTER v. SPARKMAN, 335 So.2d 802 (Fla. 1976); PINILLOS v. CEDARS OF LEBANON HOSPITAL CORP., 403 So.2d 365 (Fla. 1981). The statute does not satisfy the remaining criteria of the tests, however.

The plaintiff's judgments render the defendants liable to her in the amount of $12,473,250.00. Included within that amount is a sum of $7,536,000.00 for necessary future medical expenses (reduced to present money value). The jury also found that the plaintiff's life expectancy is 40 years. In other words, the jury has determined that the plaintiff will require a sum of approximately $188,400.00 per year (in present money value) to meet her necessary future medical expenses. The statute, of course, prohibits the plaintiff from recovering her judgments now. Notwithstanding its apparent intent, however, the statute also prohibits the plaintiff from *ever* recovering her judgment. After deduction of the plaintiff's attorneys' fees (which, assuming a reasonable contingent fee of 40%, will be approximately $4,900,000.00), the principal balance of the judgments remaining will be approximately $7,500,000.00. That $7,500,000.00 will earn interest at the statutory rate of 12%, or approximately $900,000.00 per year. Since the statute limits the defendants' liability on the judgments to $100,000.00 per year, it is clear on the facts in this case that the plaintiff will not even recover enough to defray 85% of the annual interest accruing on the principal balance of the judgments, much less recover any portion of the principal. Simply put, the plaintiff can *never* recover her judgments under the terms of the statute, notwithstanding that subsection (3)(e)(3) provides that the plaintiff is to be paid "until the claim has been *in full*". In short, the statute — as applied to the facts in this case — is arbitrary, oppressive, intrinsically unfair, and internally contradictory (since it contemplates the ultimate satisfaction of a judgment which is made impossible by the terms of the statute itself). The statute is therefore irrational in the extreme, when applied to the facts in this case.

In addition, notwithstanding that the jury has determined that the plaintiff will require approximately $188,400.00 per year (in present money value) over her 40-year life expectancy simply to meet her

necessary expenses for medical care, the statute arbitrarily limits her recovery to $100,000.00 per year — a sum which is slightly over one-half of the sum necessary to keep her alive presently, and which will diminish to considerably less than half that amount as the years pass and the value of the dollar decreases. A statute which contemplates that the plaintiff be paid in full, and which then caps her annual recovery at an amount which is insufficient to keep her alive is irrational in the extreme, and it violates the plaintiff's fundamental right to life on the facts in this case.

Further, the statute actually subverts its own announced purpose of alleviating the "medical malpractice insurance crisis", because it *prevents* good faith settlements and *requires* all medical malpractice actions in which a claim greater than $100,000.00 is made to be tried to judgment. That conclusion is compelled because, although subsection (3)(e)(1) "authorize[s the fund] to negotiate with any claimants *having a judgment* exceeding $100,000.00 cost to the fund to reach an agreement as to the manner in which that portion *of the judgment* exceeding that $100,000.00 cost is to be paid", the statute does not authorize the fund to settle claims before judgment on any terms other than those set forth in the statute. Depriving the defendants of any ability to compromise good faith claims, and requiring them instead to litigate all serious claims to judgment, clearly increases the cost of defending the medical malpractice actions which are filed against participants in the fund every year — which is not a reasonable solution to the high cost of defending medical malpractice actions which the statute is supposed to provide.

The statute also violates the due process and equal protection clauses of the State and Federal Constitutions for an additonal reason. It does not treat all health care providers alike, and it does not treat all medical malpractice victims alike. Instead, private hospitals are required to participate in the Fund, government hospitals are exempted from the fund, and other health care providers are given an option concerning whether to participate in the fund or not. In addition, health care providers who are required to or who choose to participate in the fund are given special privileges and immunities not afforded to governmental health care providers or to private health care providers who choose not to participate in the fund. The statute also creates a special class of tort victims who, unlike other tort victims, are deprived of rights to lump-sum judgments. And the statutes creates two classifications of medical malpractice tort victims — those with insignificant injuries who are compensated in full, and those with substantial and life-threatening injuries, such as the plaintiff, who are not even provided a sufficient amount of money to pay the interest accruing on the amounts owing them, much less an amount of money to pay their necessary medical

expenses. It is the latter classification which is particularly offensive to the equal protection clauses of the two constitutions, since it is impossible that singling out the most seriously injured medical malpractice victims (rather than imposing the same burden equally upon all medical malpractice victims) bears any reasonable relationship to the announced purpose of alleviating the "medical malpractice insurance crisis". If there is such a crisis, the *only* reasonable way to deal with it is to spread the burden among all medical malpractice victims, or preferably, to the society at large. See AMERICAN BANK & TRUST CO. v. COMMUNITY HOSPITAL OF LOS GATOS-SARATOGA, INC., 104 Cal. App.3d 219, 163 Cal. Rptr. 513 (1980); CARSON v. MAURER, 424 A.2d 825 (N. H. 1980). The provision of the statute limiting the hospital's liability and the limited future payout provision of the statute therefore violate the due process and equal protection clauses of the State and Federal Constitutions. To the extent that the statute simply creates a trust fund in the nature of liability insurance for the hospital, the statute is not constitutionally offensive — and the plaintiff is therefore entitled to collect her judgment in the full amount from both the hospital and the fund.

It is also a settled proposition of Florida constitutional law that, because of Article I, Section 21, the legislature may not abolish a common law right without demonstrating an overpowering public necessity for its abolition, and without providing a reasonable alternative for the right abolished. KLUGER v. WHITE, 281 So.2d 1 (Fla. 1973). Even when an overpowering public necessity exists for the abolition of such a right and an alternative is provided, the legislation will violate Article I, Section 21 of the Florida Constitution if the alternative is not the "least onerous alternative" available. OVERLAND CONSTRUCTION CO., INC. v. SIRMONS, 369 So.2d 572 (Fla. 1979). In the instant case, it is indisputable that the plaintiff's common law right as a tort victim to receive and collect a lump-sum judgment has been taken away from her by §768.54 — at least with respect to the hospital. Moreover, the limitation of liability created by the statute caps the hospital's liability at $100,000.00 — which is a mere .01% of the total damages to which the plaintiff is entitled. The abolition of 99.99% of a right is the abolition of that right. In addition, $100,000.00 is an insufficient sum to pay even 40 days' interest on the plaintiff's judgment against the hospital (even after her attorneys' fees are paid) — a period which was already passed — so the limitation actually results in this case in a total abolition of the plaintiff's right to recover *any* portion of the principal amount of her judgment. The question which remains is whether the alternative provided to the plaintiff is the "least onerous alternative" available to the legislature to accomplish its objectives at the least

expense to the plaintiff. In view of the Court's conclusions concerning the irrationality of the alternative provided to the plaintiff, and the fact that numerous "less onerous alternatives" were clearly available to the legislature, it is clear that §768.54 violates Article I, Section 21 on the facts in the instant case, and that the plaintiff is entitled to receive and enforce a lump-sum judgment against the hospital as a result.

B. The applicability and constitutionality of §768.51, Fla. Stat. (1981).

Section 768.51, Fla. Stat. (1981), provides generally that the Court may, at the request of a health care provider, enter a judgment ordering that damages for future losses be paid in periodic payments rather than a lump-sum payment. Both the hospital and the fund seek the benefit of this statute in the event §768.54 is declared unconstitutional. The statute is not available to the fund, however, because it applies by its own express terms only to "health care provider[s] as defined in s. 768.50(2)(b) . . .". The definition of "health care provider" provided in §768.50(2)(b) includes the hospital in this case, but it does not include the fund. The fund's request for the benefit of the statute therefore has no basis in the statute. Even if the fund were a "health care provider" within the meaning of §768.51, however, it still is not entitled to the benefit of the statute, for the same reason that the hospital is not entitled to the benefit of the statute in this case.

The hospital is not entitled to the benefit of the statute, even though it is a "health care provider", because the statute requires future periodic payments to be structured upon future damages computed "before any reduction to present value". Section 768.51(1)(b)(1). In this case, both the hospital and the fund agreed to submission of a verdict form which required the jury to reduce all future economic losses to present money value, and which eliminated any finding for future damages not reduced to present money value. All of the future damage awards contained in the jury's verdict in this case have therefore been reduced to present money value, and no numbers exist corresponding to the plaintiff's unreduced future damages upon which this Court could determine how to structure a judgment involving future periodic payments. For that simple reason alone, §768.51 has been rendered irrelevant by the verdict entered in this case.

In addition, although the statute does not suffer all of the deficiencies inherent in §768.54 (since it at least gives this Court some discretion to ensure that the plaintiff will recover sufficient sums to pay her future medical expenses and ultimately recover her judgment during her life expectancy), the statute nevertheless contains a number of the same

deficiencies which render §768.54 unconstitutional. Like §768.54, the statute impermissibly encroaches upon the inherent power of this Court to enter and enforce its own judgments. In addition, the statute arbitrarily and invidiously discriminates against medical malpractice victims who have suffered damages in excess of $200,000.00 by placing all of the burden for alleviating the perceived "medical malpractice insurance crisis" upon them, and no burden whatsoever upon any medical malpractice victim who suffers damages in an amount less than $200,000.00.

The statute also abolishes the plaintiff's common law right to receive a lump-sum recovery, and substitutes in its stead an alternative provision that the "future judgment" be secured by posting "security adequate to assure full payment of such damages awarded by the judgment". This alternative is not a reasonable substitute for the common law right abolished by the statute because it conditions the plaintiff's recovery upon the continued solvency and responsiveness of the tortfeasor (and any surety obtained to provide "security") over a 40-year period — a condition which is highly speculative (especially in view of the legislature's perception of a "crisis" in the health care and insurance industries). It is altogether arbitrary and unreasonable to condition the plaintiff's ability to sustain her life upon such a speculative condition.

Finally, the statute contains a provision which requires the plaintiff to forfeit all future damages not yet received if she dies within the 40-year life expectancy upon which a "future judgment" under the statute must be structured. In other words, the statute stands ready to take away a substantial portion of the damages to which the plaintiff is now entitled in the event of her death, although it does not operate in that manner with respect to any medical malpractice victim who has suffered less than $200,000.00 worth of future damages. This provision, by itself, is sufficient to render the statute unconstitutional. See AMERICAN BANK & TRUST CO. v. COMMUNITY HOSPITAL OF LOS GATOS-SARATOGA, INC., supra; CARSON v. MAURER, supra. For all of the foregoing reasons, §768.51 is inapplicable to the instant case, and if applicable, unconstitutional for the reasons set forth above.

## C. The fund's entitlement to a stay pending appeal.

The fund has also moved this Court for a stay of execution pending appeal without the need for posting a supersedeas bond, contending that it is a "public body" within the meaning of Rule 9.310(b)(2), Fla. R. App. P. There is no provision in §768.54, however, which even arguably purports to make the fund an agency of the state. The fund is nothing more than an insurance trust fund composed of contributing health care providers, and it is not a "public body" entitled to a stay of execution without bond. See KUVIN, KLINGENSMITH & LEWIS v.

FLORIDA INSURANCE GUARANTY ASSN., INC., 371 So.2d 214 (Fla. 3rd DCA 1979). In addition, the fund has conceded in its memorandum that it is not a "public body" within the meaning of Rule 9.310(b)(2).

Upon the foregoing conclusions, it is ORDERED and ADJUDGED as follows:

1. The defendant, FLORIDA MEDICAL CENTER's "Motion for Reduction of Verdict, Limitation of Liability and Motion to Alter and/or Amend the Judgment" be and the same is hereby denied;

2. Defendant, FLORIDA PATIENT'S COMPENSATION FUND's "Motion to Alter or Amend Judgment" be and same is hereby denied;

3. The defendant, FLORIDA PATIENT'S COMPENSATION FUND's "Motion for Stay of Execution" be and the same is hereby denied. Enforcement of the judgment is hereby stayed for a period of 30 days from the date of entry of this order, however, in order to allow the defendants to post a good and sufficient supersedeas bond pursuant to Rule 9.310(b)(1), Fla. R. App. P. If a good and sufficient supersedeas bond is not posted within 30 days of entry of this order, execution shall issue at the request of the plaintiff at the expiration of that period;

4. The Court reserves ruling on the plaintiff's motion for attorney's fees. The parties are requested to schedule an appropriate hearing for disposition of that motion.