No. 92-044

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

MONTANA HEALTH CARE ASSOCIATION;
a Montana nonprofit corp.; DISCOVERY
CARE CENTRE; a Montana Corporation; AND
VALLEY NURSING, INC., d/b/a VALLEY HEALTH
CARE CENTER, a Minnesota Corporation,

               Plaintiffs and Appellants,

-vs-

MONTANA BOARD OF DIRECTORS OF THE STATE
COMPENSATION MUTUAL INSURANCE FUND; PATRICK
SWEENEY, Executive Director of the State
Compensation Mutual Insurance Fund; and
STATE COMPENSATION MUTUAL INSURANCE FUND,

               Defendants and Respondents.

FILED

JAN 4 - 1993

..d Smith
CL... OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the First Judicial District,
                 In and for the County of Lewis & Clark,
                 The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

    For Appellants:

        G. Steven Brown argued, Attorney at Law, Helena,
        Montana

    For Respondents:

        John T. Alke argued, Hughes, Kellner, Sullivan &
        Alke, Helena, Montana
        Nancy Butler, General Counsel, State Compensation
        Mutual Insurance Fund, Helena, Montana

                        Submitted: September 10, 1992

                          Decided: January 4, 1993

Filed:

_____
Clerk

Justice John Conway Harrison delivered the Opinion of the Court.

This is an appeal from a declaratory judgment of the First Judicial District Court, County of Lewis and Clark, the Honorable Thomas C. Honzel presiding. The original action was a request for writs of mandamus and prohibition and a declaratory judgment that the respondents (State Fund) had illegally adopted workers' compensation rates, including a substantial increase in appellants' premium, and had violated the Montana Open Meeting Act, the Montana Public Participation Act, the Montana Administrative Procedure Act (MAPA) and Article II, sections 8 and 9 of the Montana Constitution. We affirm in part and reverse in part.

The District Court decided that even though State Fund had violated the notice provisions of the Public Participation Act, it would not be appropriate to set aside the rate increases, or issue a writ of mandamus or prohibition, "because of the requirement that the state insurance program be adequately funded." Instead, the court issued a declaratory judgment that State Fund is not required to release employer-specific data on payroll and claims experience; that State Fund must comply with MAPA in amending a rule that incorporates the Underwriting Manual; and that State Fund must make an "association plan" available to every policy holder. The court also ruled that State Fund is not required to follow MAPA rule-making procedures when it changes its schedule for premium payments or adopts portions of the Underwriting Manual, and that State Fund is not required to mail packets of Board of Directors materials to the public in advance of meetings, as long as the materials are

2

available for review at State Fund's office. Attorney's fees were awarded to appellants.

The State Compensation Mutual Insurance Fund is the workers' compensation insurer for 27,000 Montana employers. It collects approximately 64 percent of the premiums paid for workers' compensation insurance in Montana. Patrick Sweeney is its executive director.

The Montana Health Care Association (MHCA) is a Montana nonprofit corporation whose members provide long-term health care throughout the state. Discovery Care Centre and Valley Health Care Center are members of MHCA and hold State Fund workers' compensation insurance policies.

## DISCLOSURE OF EMPLOYER-SPECIFIC INFORMATION

The first issue on appeal is whether State Fund must make available to the public the employer-specific payroll and claims information that is used to calculate workers' compensation rates.

In May 1991, State Fund notified MHCA members that the fiscal 1992 workers' compensation rate for class code 8829 (nursing homes) would be increased from $10.67 to $13.33. Although State Fund had already advised MHCA of the general method used to calculate these rates, MHCA requested employer-specific information, in a letter dated May 21, 1991. State Fund provided some but not all of the requested information, and on June 19, 1991, State Fund informed MHCA that it would not provide this information without a signed release from each policy holder. MHCA filed the District Court action on June 21, 1991.

3

Appellants rely on Article II, section 9 of the Montana Constitution, which provides that no one may be deprived of the right to examine documents or observe the deliberations of public bodies except when the demand of individual privacy "clearly exceeds the merits of public disclosure." State Fund relies on Article II, section 10 of the Montana Constitution, which provides that the right of individual privacy shall not be infringed without the showing of a compelling state interest, and on § 39-71-224, MCA, which exempts from disclosure public records of the Department of Labor that contain information of a personal nature.

This Court has held that the only limit on the public's right to receive information is the constitutional right to privacy. Allstate Insurance Co. v. City of Billings (1989), 239 Mont. 321, 325, 780 P.2d 186, 188. We have adopted the following two-tier test for determining whether a person has a constitutionally protected privacy interest:

(a) Whether the person has a subjective or actual expectation of privacy; and

(b) whether society recognizes that expectation as reasonable. Great Falls Tribune Co. v. Cascade County Sheriff (1989), 238 Mont. 103, 105, 775 P.2d 1267, 1268, citing Montana Human Rights Div. v. City of Billings (1982), 199 Mont. 434, 441, 649 P.2d 1283, 1287. If we determine that a constitutionally protected privacy right exists, we then balance it against the constitutional right to know.

Most of the cases in which we have balanced the public's right

4

to know against the right to privacy concerned the privacy of individuals. In <u>Great Falls Tribune</u>, for example, we held that when law enforcement officers have engaged in conduct that subjects them to disciplinary action, the public's right to know outweighs law enforcement officers' privacy interests. Similarly, we held in <u>Montana Human Rights Division</u> that the State's interest in prohibiting employment discrimination outweighs the privacy interest of city employees who had not complained of discrimination, but whose employment records were critical to the Human Rights Division investigation of a complaint. In Engrav v. Cragun (1989), 236 Mont. 260, 769 P.2d 1224, on the other hand, we found that the public's right to know about county law enforcement operations does <u>not</u> outweigh the privacy interest of people whose names appeared in telephone logs and case files. Here, we must balance the public's right to know against the privacy interest of employees and employers insured by State Fund.

Appellants concede that employer-specific payroll information meets our criteria for a right to privacy, but they contend that the merits of public disclosure are more important, and that the District Court wrongly held that the insured employees' and employers' right to privacy outweighs appellants' right to know. To support this contention, appellants assert that MHCA cannot assess the accuracy of State Fund classifications without access to employer-specific data. This assessment is critical, they argue, because a State Fund error regarding one employer in a class affects the workers' compensation rate for every member of that

5

class.

State Fund argues that appellants can detect errors and illegal actions on the part of State Fund by reviewing published aggregate data; therefore, no compelling state interest justifies an invasion of the insured employees' and employers' privacy. In other words, State Fund asserts, employer-specific information should not be released merely to allow MHCA to check State Fund's arithmetic.

Our cases establish that corporations have a right to privacy and that a state agency may assert the privacy interest of others, including corporations. Belth v. Bennett (1987), 227 Mont. 341, 345, 740 P.2d 638, 641; Mountain States Telephone and Telegraph Co. v. Dept. of Pub. Serv. Reg. (1981), 194 Mont. 277, 634 P.2d 181. The question here is whether the privacy interests of State Fund's insured employees and employers outweigh the right of the public, as represented by appellants, to inspect aggregate payroll data and claims experience for individual employers.

State Fund points to our decision, in Belth, that public access to insurance companies' financial statements should be denied because the demands of privacy outweighed the merits of public disclosure. In Belth, however, we found that the insurance companies had provided the information with the understanding that it was confidential and that comparable information was available to the public elsewhere. Here, it has not been argued that the insured employees and employers were assured of confidentiality, and comparable information is not available elsewhere. Employer-

6

specific claims data are not available from any source, though some of the payroll data sought by appellants have been reported to the Department of Health and Environmental Sciences for health planning purposes.

The District Court found that appellants' purpose in requesting employer-specific claims and payroll information is essentially an "audit function," because an employer has no right to a contested case hearing when its premium rate is changed. The court concluded, therefore, that the insured employees' and employers' right to privacy outweighs appellants' right to know and that State Fund therefore is not required to release employer-specific claims or payroll information.

We reverse, holding that in this case employees' and employers' right to privacy does not clearly exceed the merits of public disclosure, and that the public's right to know therefore outweighs the privacy interest. We believe, as we suggested in Mountain States Telephone and Telegraph, 634 P.2d at 187, that

> an order can be fashioned in such manner that the state public agencies can perform their duties with the fullest available information and at the same time disclose to the public all information required to enable citizens to determine the propriety of governmental actions affecting them.

We remand this case to the District Court for an order that meets this standard.

**RULEMAKING**

The second issue on appeal is whether State Fund must adopt the following as rules under MAPA: provisions of State Compensation Mutual Insurance Fund Policy Service Underwriting Manual

7

(Underwriting Manual); criteria for "association plans;" and policies regarding the payment of premiums. Since different considerations govern each of these areas, we address them separately.

First, however, we emphasize that the State Compensation Mutual Insurance Fund (the state fund) is subject, as the District Court recognized, to laws that apply generally to state agencies, including MAPA and the Montana Public Participation and Open Meetings Acts. Section 39-71-2314(2), MCA. In particular, the state fund must follow MAPA rulemaking procedures when it adopts "a process, a procedure, formulas, and factors" for setting or changing premium rates, under § 39-71-2316(6), MCA, though it is exempt from MAPA rulemaking procedures when it _changes_ classifications and premium rates. In other words, once the state fund has promulgated rules for establishing premium rates, it need not go through MAPA rulemaking procedures to change those rates.

## The Underwriting Manual

On May 6, 1991, State Fund published a Notice of Proposed Amendment of ARM 2.55.301, which prescribes the method of classifying occupations for the purpose of assessing workers' compensation rates. The proposed amendment incorporated by reference the "Classifications" section of the Underwriting Manual, effective July 1, 1991. This section is the only portion of the Underwriting Manual that State Fund has adopted formally as a rule. Patrick Sweeney adopted the amendment for the state fund on June

17, 1991.[1]

MHCA requested a copy of the July 1991 Underwriting Manual in June but was told that it had not been prepared or printed and probably would not be available until September 1991. On July 8, MHCA was given a draft version of the revised classification section. This draft was not available to Patrick Sweeney when he adopted the amended rule on June 17. Comment on the proposed amendment was invited on May 6, but as the District Court pointed out, it was not possible at that time for an employer to know whether it was affected by the changes.

As the District Court said, "for an agency to adopt as a rule something which is not available for review and comment is directly contrary to the requirements of MAPA." We agree. Since State Fund adopted the classification section of the Underwriting Manual as a rule, it may amend that section only through the process described in Title 2, chapter 4, MCA.

Appellants contend that the District Court should have required State Fund to adopt the "General Rules" section of the Underwriting Manual, which is incorporated in its insurance contracts, as a formal rule under MAPA, because this section implements and prescribes law and policy in ways that affect employers' substantive rights. State Fund argues that its

---

[1] The District Court found that the state fund's rulemaking power must be exercised by the State Fund Board of Directors, not by the state fund's executive director. State Fund has not appealed this decision, and the Board of Directors has adopted rules that are identical in effect to those previously adopted by the executive director.

9

insurance policy is a contract and that the "General Rules" section of the Underwriting Manual merely states some of the contract terms and does not implement, interpret, or prescribe law or policy.

The District Court found that State Fund's failure to adopt the "General Rules" section of the Underwriting Manual in accordance with MAPA was not critical to this lawsuit, and that in any case State Fund is not required to adopt this section of the Underwriting Manual as a formal rule. Finding that the District Court interpreted MAPA correctly, we affirm.


## Association Plans

State Fund has agreements with three trade associations (loggers, food distributors, and motor carriers) under which it reimburses the association for providing safety inspectors in lieu of State Fund safety inspectors. These agreements are called "association plans."

Appellants complain that State Fund has no policies or criteria regarding the creation or administration of association plans, and that State Fund has never met with MHCA, as it promised it would in March 1990, to determine whether MHCA is eligible for an association plan. Appellants assert that association plans provide substantial benefits to the employers that have them, and that all State Fund policy holders pay indirectly for the safety inspectors hired under these plans. Therefore, appellants argue, State Fund should be ordered to adopt as formal rules its criteria and standards for awarding and administering the plans.

State Fund asserts that it has no policy of general application with respect to association plans and that formal rule-making is not appropriate because each "plan" is a unique contract, with provisions that depend on the nature of the trade association involved. State Fund also implies, though it does not state directly, that it intends to make association plans available to all trade associations, including MHCA if it is "willing and able to enter into the contract."

The District Court held that State Fund must make association plans available to all associations and must let associations and employers know that such plans are available, but it was "not convinced" that State Fund must adopt rules setting forth uniform standards for such plans. We agree. The intent of the 1989 act that created the state fund was that the state fund must, as the "primary means" of insuring its solvency, "institute safety programs and set rates in a manner that rewards employers who provide a safe working environment and penalizes those who do not." Statement of Intent, 1989 Mont. Laws, Ch. 613. So long as State Fund administers its association plans consistently with this intent, formal rulemaking is not required. Indeed, State Fund probably can fulfill the intent of the Act only by entering into contracts tailored to the needs and circumstances of each trade association or class of employers.

Premium Payment Schedule

Until early 1991, State Fund's practice was to require

11

employers to submit payroll information at the end of each quarter and then to pay the premium due for that quarter thirty days later. In mid-1991 State Fund combined payroll reporting and premium payment on a single form, which in effect accelerated the premium payment by thirty days. This change in procedure was initiated by staff and apparently accepted by the Board at its meeting of May 24, 1991. No notice of this change was sent to MHCA or to policy holders.

Appellants argue that MAPA applies because State Fund's decision to change the premium date affects parties' rights and obligations, and that State Fund's decision therefore should be subject to public notice and comment. The District Court held that the obligation to pay a premium arises when the coverage is provided, and that the timing of billing for that coverage is not a matter that requires a rule. We affirm. State Fund's billing schedule does not alter the obligation incurred by employers who enroll with State Fund.

### PUBLIC PARTICIPATION AND THE BOARD PACKET ISSUE

The third issue on appeal is whether State Fund should be required to mail a copy of the agenda and the meeting materials or "Board packet" to anyone who requests it, prior to a meeting of the State Fund Board of Directors (Board).

Board agendas and packets of materials are generally mailed to Board members a week to ten days in advance of meetings. On June 3, 1991, MHCA requested advance notice of Board meetings and advance copies of the agenda and other materials sent to Board

12

members. Patrick Sweeney promised to ask his receptionist to call MHCA two or three days before each Board meeting, but he declined to provide packets on the grounds that the materials would be available at the State Fund office to anyone who wished to inspect them.

Appellants contend that agenda materials sent to members of the Board must be mailed to interested members of the public in advance of Board meetings. They argue that Article II, section 8 of the Montana Constitution, which establishes a right to "such reasonable opportunity for citizen participation" in the operation of governmental agencies "as may be provided by law," and the Public Participation Act that implements it, require State Fund to provide any interested person with advance notice of the agenda and copies of materials distributed to Board members. See §§ 2-3-101 through -114, MCA. In short, appellants assert that by refusing to mail Board packets to members of the public who request them, State Fund denies the public a reasonable opportunity for meaningful public participation before final decisions are made.

State Fund contends that MHCA's right to public participation is not impaired by State Fund's refusal to mail advance Board packets on request because the material is available at State Fund's office, which is across the street from MHCA's office. No one else has requested an advance Board packet. The District Court agreed, holding that State Fund is not required to mail Board packets. We affirm.

As we held in Kadillak v. Anaconda Co. (1979), 184 Mont. 127,

13

141, 602 P.2d 147, 155, "the right to participate is limited to those instances where that right is provided by law." Neither the Public Participation Act nor the Open Meetings Act requires advance mailings. Making Board agenda materials available to the public at State Fund's office, in our view, provides a "reasonable opportunity" for participation.

The Public Participation Act does require advance <u>notice</u> of final agency action, however, and the District Court pointed out that State Fund has not always complied with this provision (§ 2-3-103, MCA). Further, § 2-3-103 requires state agencies, including State Fund, to develop procedures for public participation. State Fund has adopted only one rule providing for public participation, and it provides that the date, time and place of a Board meeting may be obtained by contacting the State Fund office. The District Court found that this provision is not adequate, and we agree. State Fund, however, did not appeal the District Court's conclusion that it must adopt rules that comply with § 2-3-103, MCA.

### ATTORNEY'S FEES

Appellants have requested reasonable attorney's fees and costs incurred in this appeal. This Court has adopted the "American Rule" regarding attorney's fees. Department of Fish, Wildlife and Parks v. Montana Stockgrowers Ass'n, Inc. (1989), 240 Mont. 39, 782 P.2d 898. Under the American Rule, a party in a civil action is generally not entitled to fees absent a specific contractual or statutory provision. Section 25-10-711(1), MCA, provides for attorney's fees in civil actions to which the state is a party, but

14

only when the party seeking attorney's fees has prevailed <u>and</u> the court finds that the state's claim or defense is frivolous or pursued in bad faith. See Armstrong v. Dept. of Justice (1991), 250 Mont. 468, 820 P.2d 1273; Myers v. Dept. of Agriculture (1988), 232 Mont. 286, 756 P.2d 1144. Here, there is no indication that State Fund's defense was frivolous or in bad faith. Appellants therefore are not entitled to attorney's fees for this appeal.

## CONCLUSION

We reverse the judgment of the District Court that State Fund is not required to provide employer-specific information and remand to the District Court for entry of an appropriate order. We affirm the judgment of the District Court with respect to all other issues addressed herein.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____
Justices

15

January 4, 1993

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

G. Steven Brown
Attorney at Law
1313 Eleventh Ave.
Helena, MT   59601

John T. Alke
Hughes, Kellner, Sullivan & Alke
P.O. Box 1166
Helena, MT   59624-1166

Nancy Butler, General Counsel
State Comp. Mutual Ins. Fund
P.O. Box 4759
Helena, MT   59604

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy