NO.   93-254

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

WILLIAM T.  "BILL"  HOWELL  AND  JENSEN
HOWELL  AND  GRANGE  INSURANCE  ASSOCIATION,

     Plaintiffs,

          V.

THE  STATE  OF  MONTANA,  and  its  agent,
THE  MONTANA  POTATO  IMPROVEMENT  ASSOCIATION,

     Defendants,  Third-Party  Plaintiffs,
     Respondents  and  Cross-Appellants,

          V.

MONTANA  INSURANCE  GUARANTY  ASSOCIATION,

     Third-Party  Defendant  and  Appellant.

**FILED**

FEB 0 1 1994

*Ed Smith*
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Fourth Judicial District,
               In and for the County of Missoula,
               The Honorable Ed McLean, Judge presiding.


COUNSEL OF RECORD:

     For Appellant:

          Robert J. Phillips; Phillips & Williams, Missoula,
          Montana

     For  Respondents  (Cross-Appellants):

          William L.  Crowley;  Boone,  Karlberg  &  Haddon,
          Missoula,  Montana


                    Submitted  on  Briefs:   December  22,  1993

                              Decided:   February  1,  1994

Filed:

_____
                ~ Clerk

Justice **Karla** M. Gray delivered the Opinion of the Court.

This complex litigation between the State of Montana, the Montana Potato Improvement Association, the Montana Insurance Guaranty Association, and others has spanned fifteen years. In the present appeal, we are asked to determine whether the State has a valid indemnification claim against the guaranty association for $360,000 previously paid to an insurance company in settlement. We affirm the determination of the Fourth Judicial District Court, Missoula County, that the State's indemnification claim is a covered claim but conclude that the claim is statutorily limited to $300,000. A brief summary of the procedural history is necessary to understand the issues currently before us.

In 1979, several Washington potato farmers filed suit against William and Jensen Howell (the **Howells**) for selling seed potatoes infected with ring rot. They also filed against the Montana Potato Improvement Association (Potato Association) for certifying the seed potatoes and against two Washington warehouses. A Washington jury found the Potato Association and the two warehouses jointly and severally liable in various degrees for **$485,653.82** in damages and **$1,451.06** in costs. The **Howells** were not found negligent, but the Washington court ordered the **Howells** to indemnify one of the warehouses because of a breach of warranty claim.

In June of 1981, the First Judicial District Court, Lewis and Clark County, issued a declaratory judgment finding that the Potato Association was an agent of the State and holding that the State's insurer, Glacier General Assurance Company (Glacier General), had

2

a duty to defend and indemnify the Potato Association under the insurance contract between the State and Glacier General. The Washington plaintiffs subsequently filed their judgments with the First Judicial District Court and, in an order issued in August of 1983, that court recognized the validity of the foreign judgments against the Potato Association in the total amount of $485,653.82, plus costs and interest.

In October of 1983, the Washington plaintiffs assigned their interests in the judgments to the Howells. The Howells used funds provided under a reservation of rights agreement by their insurer, Grange Insurance Association (Grange Insurance), to purchase the assignments. When Glacier General failed to pay the judgments, the Howells and Grange Insurance filed the present action in the Fourth Judicial District Court, Missoula County, seeking to enforce the judgments against the State, the Potato Association and Glacier General.

After Glacier General was declared insolvent in the spring of 1985, the Montana Insurance Guaranty Association (MIGA) intervened to defend the State and the Potato Association under a reservation of rights, pursuant to §§ 33-10-101 et seq., MCA, of the Montana Insurance Guaranty Association Act (the Act). On April 30, 1987, the State, the Potato Association and MIGA entered into a written agreement concerning the defense and indemnity of Grange Insurance's claims against the three parties (1987 Agreement).

On October 6, 1988, the District Court granted summary judgment in favor of the State, the Potato Association and MIGA and against the Howells and Grange Insurance. It concluded that only

3

Grange Insurance, and not the **Howells,** owned the foreign judgments and that, pursuant to the Act, an insurance company could not collect from either MIGA or the insureds of an insolvent insurance company. This Court concluded on appeal that, although the definition of "covered claim" found in § 33-10-102(2)(b), MCA, does not include any amount due an insurer and, therefore, prohibited Grange Insurance from collecting from MIGA, the Act did not absolve the tortfeasors from judgments. Therefore, we reversed the summary judgment entered in favor of the State and the Potato Association. Howell v. Glacier Gen. Assurance Co. **(1989),** 240 Mont. 383, 387, 785 **P.2d** 1018, 1020 (<u>Howell I</u>). We directed the court to enter judgment against the Potato Association and to determine the amount of damages for which the State was liable.

After the case was remanded, the District Court granted a motion by the State and the Potato Association (collectively hereafter the State) to file a third-party complaint against MIGA. The third-party complaint alleged that:

> **[A]s** was determined in a prior declaratory action! Cause No. 44186 . . . , the State and [the Potato Association] were insureds of Glacier under the contract issued by Glacier. Also, as was determined in Cause No. 44186, Glacier owed the [Potato Association] a duty to defend and indemnify it under the terms of the applicable Glacier Insurance Company policy for the matters alleged by Grange Insurance. . . .
>
> . . .
>
> Under the provisions of the Montana Insurance Guarantee Act, . . . [MIGA] stands in the shoes of Glacier and [MIGA] has all rights, duties and obligations of Glacier concerning the State or the [Potato Association].
>
> . . .
>
> One purpose of the Guarantee Act is to avoid financial

loss to insureds of insolvent insurers. Allowing an insurance company such as Grange Insurance to recover from the insured while refusing to allow the insured recovery from [MIGA] defeats this purpose of the Guarantee Act.

The complaint sought a declaratory judgment that MIGA was obligated to indemnify the State for monies paid to Grange Insurance.

By this time, the amount of the judgment had increased through accruing of interest to well over a million dollars. Grange Insurance offered to settle for $360,000; the State offered to pay $180,000, provided that MIGA would match that figure. MIGA declined, maintaining that our decision in Howell I had absolved it of any liability to Grange Insurance. On June 22, 1992, the District Court approved a settlement resolving all claims between Grange Insurance, the State and the Potato Association for $360,000.

The State then filed a motion for summary judgment against MIGA for indemnification of the $360,000 settlement amount, plus costs and certain attorney's fees; MIGA responded with a cross-motion for summary judgment. The District Court granted summary judgment for the State, concluding that MIGA was liable for the $360,000 settlement amount under both the Act and the 1987 Agreement. The District Court denied the State's request for attorney's fees. Both parties appeal.

Our standard in reviewing a grant of summary judgment is the same as that initially utilized by the trial court. McCracken v. City of Chinook (1990), 242 Mont. 21, 24, 788 P.2d 892, 894. Summary judgment is appropriate when the pleadings, depositions, and other documents on file demonstrate that no genuine issue of

5

material fact exists and that the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Both parties agree that no genuine issues of material fact exist; indeed, both moved for summary judgment in the District Court on that basis. Therefore, our review is whether the District Court correctly interpreted the law. Mooney v. Brennan (1993), 257 Mont. 197, 199, 848 P.2d 1020, 1022.

The first issue before us is whether the State's claim against MIGA for indemnification of the $360,000 paid out as settlement monies in an action to enforce judgments against the State is a "covered claim" as defined by the Act. MIGA raises two arguments to support its contention that the State's claim is not covered. First, it asserts that the claim has been paid and, therefore, cannot constitute a covered claim. Second, it asserts that the Act prohibits insurance companies from recovering against MIGA and the claim in the hands of the State is, in effect, an insurance subrogation claim. We will examine each argument in turn.

The Act is patterned after the Post-Assessment Property and Liability Insurance Guaranty Association Model Act, which has been enacted in some form in forty-three states. Palmer by Diacon v. Montana Ins. Guar. Ass'n (1989), 239 Mont. 78, 81, 779 P.2d 61, 63; §§ 33-10-101 et seq., MCA, Part Compiler's Comments. The statutorily-stated purposes of the Act are:

- to provide a mechanism for payment of covered claims under certain insurance policies to avoid excessive delay in payment;
- to avoid financial loss to claimants or policyholders because of the insolvency of an insurer:
- to assist in the detection and prevention of insurer insolvencies: and

. to provide an association to assess the cost of such protection among insurers.

Section 33-10-101(2), MCA (emphasis added). The Act also provides that it is to be liberally construed to effectuate the above purposes and that the stated purposes constitute an aid and guide to interpretation. Section 33-10-101(4), MCA.

MIGA is the nonprofit association of insurance companies statutorily created to carry out the purposes of the Act: membership in MIGA is a prerequisite to transacting insurance business in Montana. Section 33-10-103, MCA. Once an insurer is declared insolvent, MIGA steps into the shoes of the insolvent insurer and "is considered the insurer to the extent of its obligation on the covered claims and to that extent has all rights, duties, and obligations of the insolvent insurer as if the insurer had not become insolvent." Section 33-10-105(1)(b), MCA.

MIGA's primary statutory duty, insofar as relevant to this appeal, is to pay covered claims arising under an insurance policy issued by the insolvent insurer and unpaid prior to the insolvency. Section 33-10-105(1)(a)(i), MCA, and Commission Notes thereto. A "covered claim" is defined in pertinent part as:

> an unpaid claim, including one for unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this part applies issued by an insurer, if such insurer becomes insolvent after July 1, 1971. . . .

Section 33-10-102(2)(a), MCA. On appeal, MIGA primarily argues that the State's claim is not "unpaid" because Grange Insurance's claim has been paid by the State--albeit in the reduced settlement amount of $360,000. This contention incorrectly identifies the

7

actual **"claim"** at issue here.

Under the State's third-party complaint, the State, as the policyholder, sought indemnification under its insurance policy with Glacier General of settlement monies it had paid to Grange Insurance in the action brought to enforce judgments against it. The policy with Glacier General provided:

> [Glacier General] shall pay on behalf of the insured all sums which the **insured** shall become legally obligated to pay on account of any claim for breach of duty made against the **insured** if such negligent act, error or omission is committed during the policy period . . . and [Glacier General] shall have the right and duty to defend any suit against the **insured** seeking damages on account of such breach of duty . . . .

In the 1981 declaratory judgment, the First Judicial District Court concluded that Glacier General had a duty to defend and indemnify the Potato Association under the terms of Glacier General's insurance contract with the State and stated that the Potato Association "shall be indemnified by Glacier General. . . .**"** In the present action, the District Court determined that the State's claim for indemnity "arises out of and is within the coverage and not in excess of the applicable limits" of the insurance policy between the State and Glacier General. MIGA does not dispute the question of coverage under Glacier General's policy on appeal.

Furthermore, the **State's** claim against MIGA for indemnification is, indeed, **"unpaid"** under the Act. **MIGA's** focus on the original claims--those originally held by the Washington plaintiffs and ultimately held by Grange Insurance--is misplaced. The only claim now before us is the State's indemnity claim against MIGA for $360,000. As discussed above, the claim arises out of and

8

is within the coverage of the State's insurance policy with Glacier General. Glacier General, the State's insolvent insurer, did not pay this claim. Therefore, in the hands of the State as the policyholder asserting a claim under its policy, this claim remains "unpaid."

As emphasized above, the purpose of the Act is for MIGA to pay "covered claims" in order to avoid financial hardship for both policyholders and other claimants when an insurance company becomes insolvent. As an immediate result of Glacier General's insolvency, the State has suffered a direct loss of $360,000. It is undisputed that Glacier General would have been liable to the State in this amount had it not been declared insolvent. Upon Glacier General's insolvency, MIGA assumed the duties and obligations of Glacier General to the extent of "covered claims," including the duty to indemnify the State for the monies paid to Grange Insurance. Any other result would run contrary to the stated purpose of the Act to protect "policyholders" from insolvent insurers and would completely deprive the State of the benefit of its insurance contract with Glacier General.

The cases cited by MIGA to support its argument that the State's claim was "paid" are distinguishable. In Florida Ins. Guar. Ass'n v. Dolan (Fla. App. 1978), 355 So.2d 141, an injured skier asserted a claim for $70,000 and obtained a judgment in that amount against a ski resort. The resort's insurer subsequently became insolvent and, faced with the threat of execution against the property, the ski resort placed $70,000 in an escrow account to which the skier had absolute and unconditional access. The injured

9

skier then asserted a claim against the Florida Insurance Guaranty Association (FIGA). In that case, the Florida appellate court held that the skier's claim was not covered because it was not an unpaid claim. Dolan, 355 So.2d at 142. The injured party had been paid the $70,000 and was not entitled to a double recovery.

In this case, the injured Washington plaintiffs have been paid and, under Dolan, would not be allowed to recover against MIGA. In Dolan, the Florida court did not consider the question of whether the ski resort had a claim against FIGA; the ski resort was not a party to the suit. Therefore, although Dolan does not apply to our situation, it clarifies the meaning of "unpaid" in the definition of a covered claim. The adjective "unpaid" eliminates situations like Dolan, where a stranger to the insurance policy seeks some type of double recovery. It does not apply to this case, where an insured has paid out settlement monies and seeks indemnification from MIGA under its insurance policy and the Act.

MIGA also relies on King Louie Bowling Corp. of Missouri v. Missouri Ins. Guar. Ass'n (Mo.App. 1987), 735 S.W.2d 35, which is factually similar to the case before us but, nonetheless, mandates a result opposite from that urged by MIGA. In King Louie, the injured plaintiffs refused to file suit against the Missouri guaranty association when the bowling alley's insurance company became insolvent. The bowling alley settled the claims and then filed claims against the association for indemnification. The Missouri Court of Appeals first explained that the purpose of the guaranty act was to protect insureds from the effects of insolvent insurers, a purpose which would be frustrated if an insured facing

10

a judgment was denied protection from the association. King Louie, 735 S.W.2d at 39. However, the insurance policy between the bowling alley and the insolvent insurance company did not provide for indemnification if a lawsuit was voluntarily settled before the insured became legally obligated to pay. Therefore, because the association stood in the shoes of the insurer, the association was not obligated to indemnify the bowling alley. King Louie, 735 S.W.2d at 40.

We are faced with the opposite situation in this case. It is undisputed that Glacier General would have been obligated to indemnify the State if it had not become insolvent. Moreover, unlike the bowling alley in King Louie, the State was legally obligated to Grange Insurance because of the judgments entered against it and our opinion in Howell I. As a result, King Louie does not support MIGA's contention that the State does not have a valid claim for indemnification. We conclude that the State's claim for indemnification is "unpaid" as defined by the Act, arises out of and is within the coverage of an insurance policy to which the Act applies and, thus, by definition, is a '*covered claim."

MIGA also argues that the claim is essentially an insurance subrogation claim and, therefore, under § 33-10-102(2)(b), MCA, the State cannot seek indemnity from MIGA. We disagree. Section 33-10-102(2)(b), MCA, provides:

> "Covered claim" shall not include any amount due a reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise.

MIGA concedes that neither the State nor the Potato Association is a reinsurer, insurer, insurance pool or underwriting association.

11

The rules of statutory construction require the language of a statute to be construed according to its plain meaning; if the language is clear and unambiguous, no further interpretation is required. GBN, Inc. v. Dep't of Revenue (1991), 249 Mont. 261, 265, 815 P.2d 595, 597. Applying those principles, we conclude that § 33-10-102(2)(b), MCA, does not apply to this claim. The State is asserting its claim as the insured, the policyholder, under its insurance policy with Glacier General.

Additionally, MIGA argues that our decision in Howell I requires us to conclude that the State's claim is not a covered claim. We disagree. In Howell I, we explicitly stated that the Act prohibited an insurance company, Grange Insurance, from recovering subrogation benefits from MIGA based on § 33-10-102(2)(b), MCA. We also stated that Grange Insurance was not prohibited from recovering from the State and the Potato Association as tortfeasors. Howell I, 785 P.2d at 1020. We did not address the issue of whether the State and the Potato Association could recover from MIGA on a separate indemnification claim. As emphasized above, the present claim arises from the State's third-party complaint against MIGA based on the State's insurance contract with Glacier General; the third-party complaint was filed after our decision in Howell I and is unrelated to the issues resolved in that case.

In sum, we conclude that the State's claim against MIGA for indemnification of the $360,000 is a "covered claim" under § 33-10-102(2)(a), MCA. As a result, we need not discuss issues raised by the State concerning the contractual waiver of MIGA's defenses and

12

alleged constitutional violations. However, two final issues remain for our review: we must determine whether the Act limits MIGA's liability to $300,000 for this claim and whether the State is entitled to certain attorney's fees.

Regarding the limitation issue, the District Court recognized that § 33-10-105(1)(a)(ii), MCA, limits MIGA's liability for each covered claim to $300,000. It reasoned, however, that the original claims against the **Howells** involved ten separate plaintiffs and concluded that the statutory limitation did not apply. We conclude that the court erred.

As discussed above, the State holds and asserts one covered claim against MIGA--the indemnification claim which would have been submitted to Glacier General under its insurance contract absent Glacier General's insolvency. Section 33-10-105(1)(a)(ii), MCA, is clear and unambiguous: it expressly **limits** MIGA's liability to $300,000 for each covered claim. We conclude, therefore, that the State's indemnification claim is limited to $300,000.

As a final matter, the State argues that it is entitled to recover attorney's fees incurred in defending against the claims of Grange Insurance after MIGA withdrew its defense. On February 15, 1990, this Court denied the petition for rehearing in Howell I, which held that Grange Insurance could not recover from MIGA. One month later, MIGA sent notice to the State and the Potato Association that it was withdrawing its defense in the matter, asserting that this Court's decision in Howell I absolved it of any further obligation to indemnify the State or the Potato Association as a result of the claims made by Grange Insurance.

13

Regarding this issue, the District Court concluded that, under the Act, MIGA had a duty to defend the insured and to accept a reasonable settlement offer in appropriate cases. It then determined that MIGA's decision to withdraw its defense based on Howell I was in bad faith because Howell I did not address the issue of MIGA's obligation to the State. Therefore, the court concluded that MIGA breached the 1987 Agreement and violated the Act by refusing to defend the State. However, the District Court went on to explain that § 33-10-110, MCA, which grants MIGA immunity from liability for all actions done in the performance of its duties, provided MIGA with complete immunity from damages resulting from the breach of a statutory or contractual duty.

The longstanding rule in Montana is that, absent statutory or contractual authority, attorney's fees will not be awarded. Goodover v. Lindey's, Inc. (1992), 255 Mont. 430, 445, 843 P.2d 765, 774; Bitney v. School Dist. No. 44 (1975), 167 Mont. 129, 137, 535 P.2d 1273, 1277; Ehly v. Cady (1984), 212 Mont. 82, 100, 687 P.2d 687, 696. If such authority exists, the awarding of attorney's fees is a matter of the district court's discretion. Grenfell v. Duffy (1982), 198 Mont. 90, 96, 643 P.2d 1184, 1187. Our review of a district court's legal conclusion that no basis for attorney's fees exists, however, is plenary. See Steer, Inc. v. Dep't of Revenue (1990), 245 Mont. 470, 474-75, 803 P.2d 601, 603.

It is clear that neither the State's insurance policy with Glacier General, the 1987 Agreement, nor the Act specifically authorize an award of attorney's fees to the State. The State does not contend otherwise. Thus, the State has not established a basis

14

upon which attorney's fees ordinarily could be awarded in Montana.

The State argues, however, and the District Court agreed, that MIGA violated the Act and breached the 1987 Agreement by withdrawing its defense. Thus, according to the State, the damages it sustained in the form of attorney's fees incurred in defending against the Grange Insurance judgments are recoverable. In this case, we need not address whether the District Court correctly found breaches of both MIGA's statutory and contractual duties. Regardless of whether MIGA breached the 1987 Agreement or violated the Act, the District Court correctly determined that the State is not entitled to recovery of the attorney's fees it seeks.

We note initially that the attorney's fees sought do not come within the statutory definition of a covered claim contained in § 33-10-102, MCA. Glacier General's policy does not contain an attorney's fees provision: thus, the fees do not "arise out of" and fall "within the coverage" of an insurance policy to which the Act applies. Section 33-10-102(2)(a), MCA. Therefore, MIGA's statutory duty to pay covered claims does not apply to these attorney's fees.

In addition, the attorney's fees sought by the State are in the nature of damages for breach of both statutory and contractual duties separate and apart from its covered claim. However, nothing in the Act imposes liability on MIGA for such damages. Indeed, we agree with the District Court that § 33-10-110, MCA, provides MIGA with immunity from liability for the attorney's fees in this case. Section 33-10-110, MCA, provides:

[t]here shall be no liability on the part of and no cause

15

of action of any nature shall arise against any member insurer, the association or its insurance producers or employees, the board of directors, or the commissioner or his representatives for any action taken by them in the performance of their powers and duties under this part.

Statutes must be construed according to the plain meaning of their language. Norfolk Holdings, Inc. v. Dep't of Revenue (1991), 249 Mont. 40, 43, 813 P.2d 460, 461. Further, it is our duty to interpret individual sections of an act in such a manner as to ensure coordination with the other sections of the act. State v. Meader (1979), 184 Mont. 32, 37, 601 P.2d 386, 389. In doing so, a statute will not be interpreted to defeat its evident object or purpose: the legislative objective is of prime consideration in interpreting statutes. Lewis and Clark County v. Dep't of Commerce (1986), 224 Mont. 223, 227, 728 P.2d 1348, 1351.

On its face, § 33-10-110, MCA, could be read to preclude the assertion of any liability against MIGA, even the statutory obligation to pay covered claims imposed by § 33-10-105(1)(a), MCA. Such an interpretation, however, would render the entirety of the Act, and its primary purpose of avoiding financial loss to claimants or policyholders caused by the insolvency of an insurer, a nullity. See Lewis and Clark, 728 P.2d at 1351. We decline to interpret § 33-10-110, MCA, in such a manner.

On the other hand, the legislature clearly intended to preclude liability for, and claims based on, actions taken by MIGA in the performance of its duties. Section 33-10-110, MCA. Reading this statute together with the purposes of the Act and MIGA's clear statutory duty under § 33-10-105, MCA, to pay covered claims, we conclude that the legislature intended to preclude liability

16

against MIGA for claims other than "covered claims" as defined in the Act.

Although we have not interpreted § 33-10-110, MCA, previously, other states have concluded that similar versions of the guaranty act provide immunity for guaranty associations from those claims which do not qualify as "covered claims." In **Pannell** v. Missouri Ins. Guar. Ass'n (Mo. App. **1980)**, 595 **S.W.2d** 339, for example, the insured brought a claim against the Missouri Insurance Guaranty Association for "vexatious refusal to pay," a statutory cause of action under the Missouri Insurance Code. In concluding that the trial court erred in submitting the claim to the jury, the Missouri Court of Appeals focused on the tightly restricted authority of the association that required it to pay only "covered claims" and the immunity provision that insulated the association from liability for actions taken by it in the performance of its powers and duties. <u>Pannell</u>, 595 **S.W.2d** at 352.

In Vaughn v. Vaughn (Wash. App. **1979)**, 597 **P.2d** 932, the Washington court held that damages for bad faith did not constitute a "covered claim" under the guaranty act. Therefore, the guaranty association was not liable for such damages. <u>Vaushn,</u> 597 **P.2d** at 934. The Maryland Court of Appeals similarly concluded that although attorney's fees were available under the Public Information Act, the immunity provision of the guaranty act precluded an award of attorney's fees against the Maryland Insurance Guaranty Association. A.S. Abell Publishing Co. v. Mezzanote (Md. **1983)**, 464 **A.2d** 1068, 1075.

Further, in **Isaacson** v. California Ins. Guar. **Ass'n** (Cal.

17

1988), 750 P.2d 297, the insured sued the California Insurance Guaranty Association (CIGA) for compensatory and punitive damages under three tort theories. The Supreme Court of California held that the legislative intent behind California's Guaranty Act indicated that CIGA was immune from tort liability for its conduct relating to the handling of the claims under all three theories. Focusing on CIGA's limited authority to disburse funds only for "covered claims" and to collect only those funds necessary for the payment of "covered claims," the court reasoned that CIGA did not stand in the shoes of the insolvent insurer for all purposes, but only regarding "covered claims."

Finally, we agree with the rationale expressed by the Mississippi Supreme Court in Bobby Kitchens, Inc. v. Mississippi Ins. Guar. Ass'n (Miss. 1989), 560 So.2d 129. In concluding that the immunity provision precluded punitive damages against the guaranty association, the Mississippi court explained:

> It does appear that MIGA received protection from the statutory limitations and restrictions . . . This protection is not unintended by the legislative enactment. . . . The sole purpose of the statute [the act] is to protect the insured from insolvent insurance companies and to require the financially healthy insurance companies to involuntarily contribute to protect the public. The statutes are of good purpose. Because of MIGA's involuntary nature the Legislature rightfully placed limitations on the liabilities of Association members.

Bobby Kitchens, 560 So.2d at 135.

Applied to this case, MIGA is liable for the covered claim under the State's insurance policy with Glacier General, as provided in §§ 33-10-102 and -105, MCA. MIGA is not, and cannot be, liable for the attorney's fees requested by the State because

18

those fees do not constitute a covered claim, as defined in § 33-10-102, MCA, and MIGA is immune from other liability for its actions pursuant to § 33-10-110, MCA. We hold that the District Court did not err in concluding that the State could not recover the attorney's fees it incurred in defending against Grange Insurance.

Affirmed in part, reversed in part and remanded for further orders consistent with this opinion.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

_____
Justices

19

February 1, 1994

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:

Robert J. Phillips, Esq.
Phillips & Williams, P.C.
201 W. Main
Missoula, MT  59802

William L. Crowley, Esq.
Boone, Karlberg & Haddon
201 W. Main, Ste. 301
Missoula,  MT  59807-9199

WILLIAM GIANOULIAS
Dept. of Administration
Tort Claims Division
Mitchell Bldg.
Helena, MT  59620

ED SMITH
CLERK OF THE SUPREME COURT
STAT&OF MONTANA

BY:_____
     Deputy