No. DA 06-0011

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 127

_____

| | | |
|---|---|---|
| WILLIAM BRIAN BOETTCHER and CAROL BOETTCHER, | ) ) ) | |
| Plaintiffs and Appellants, | ) ) | O P I N I O N |
| v. | ) ) | & |
| | ) | O R D E R |
| MONTANA GUARANTY FUND, WESTERN GUARANTY FUND SERVICES, JAMES REED, and STEVE KASTE d/b/a STEVE'S SPORTS CENTER, | ) ) ) ) | |
| Defendants and Respondents. | ) | |

_____

¶1     On March 16, 2006, Appellants William Brian Boettcher and Carol Boettcher (the Boettchers) filed with this Court their "Notice of Constitutional Challenge" to § 33-10-110, MCA.  Thereafter, Respondents Montana Guaranty Fund, Western Guaranty Fund Services, James Reed and Steve Kaste d/b/a Steve's Sports Center (collectively referred to hereinafter as "MGF") filed a notice with this Court that the Boettcher's constitutional challenge is untimely pursuant to Rule 38, M.R.App.P.

¶2     We address the following issue in this Opinion and Order:  Whether the Montana Guaranty Fund, a/k/a the Montana Insurance Guaranty Association (the MIGA), is an agency of the State of Montana thereby obviating the need for the Boettchers to comply with Rule 38, M.R.App.P.

**FACTUAL AND PROCEDURAL BACKGROUND**

1

¶3     The Boettchers filed a Notice of Appeal with this Court on December 19, 2005, wherein they appealed the Final Judgment of the District Court for the Eighth Judicial District, Cascade County, in Cause No. BDV 05-031. On March 16, 2006, the Boettchers filed their Notice of Constitutional Challenge of § 33-10-110, MCA, claiming that they had previously given notice of their constitutional challenge in the District Court on May 18, 2005, District Court Docket No. 23.

¶4     In response, MGF filed its Notice of Untimely Constitutional Challenge contending that the Boettchers' notice was untimely under Rule 38, M.R.App.P., because it should have been filed contemporaneously with the filing of the Notice of Appeal. Rule 38, M.R.App.P., provides as follows:

> **Cases involving constitutional questions where the state is not a party.** It shall be the duty of a party who challenges the constitutionality of any act of the Montana legislature in any action, suit or proceeding in the supreme court to which neither the state *nor any agency* or any officer or employee thereof, as such officer or employee, is a party, to give notice to the supreme court and to the Montana attorney general of the existence of the constitutional issue. This notice shall be in writing, shall specify the section of the code or chapter of the session law to be construed and *shall be given contemporaneously with the filing of the notice of appeal or with the filing of an original proceeding in the supreme court.* [Emphasis added.]

¶5     The docket of the Clerk of this Court shows that no Notice of Constitutional Challenge was filed contemporaneously with the filing of the Notice of Appeal notifying this Court or the Attorney General of the constitutional challenge. Consequently, in an Order dated March 29, 2006, we determined that under Rule 38, M.R.App.P., this Court was precluded from reaching the constitutional issue if the notice of constitutional challenge was

2

not filed contemporaneously with the notice of appeal unless the State or any agency or officer or employee thereof was a party to the action, suit or proceeding.

¶6 Because the issue of whether the MIGA is an agency of the State of Montana for purposes of Rule 38, M.R.App.P., is an issue of first impression in Montana and because neither party addressed this issue in their filings with this Court, we determined that it was appropriate to accept supplemental briefing on this issue before ruling on whether the Boettchers' Notice of Constitutional Challenge was timely filed. Consequently, we granted the parties 45 days from the date of our Order in which to prepare, file, and serve simultaneous briefs on this issue. We also invited the Commissioner of Insurance for the State of Montana to file a brief *amicus curiae* limited to this issue within the same 45 days.

¶7 On May 8, 2006, MGF filed its Memorandum of Law asserting that the MIGA is not a State agency, but purely a statutory entity. The Boettchers filed their Memorandum on May 9, 2006, asserting that the MIGA is a creature of state law and an agency of the State. The Commissioner of Insurance has not filed any supplemental briefing pursuant to our Order.

## DISCUSSION

¶8 As a threshold matter, we examine the case law interpreting Rule 38, M.R.App.P, to determine whether this Court is precluded from reaching the constitutional issue if a notice of constitutional challenge is not filed contemporaneously with a notice of appeal.

¶9 In their Memorandum addressing the issue of whether the MIGA is a state agency, the Boettchers noted that they filed their Notice of Constitutional Challenge in the District Court on May 18, 2005, and that the Office of the Attorney General responded on July 14, 2005,

3

indicating that it had no intent to intervene. Consequently, the Boettchers argue that under *State ex rel. Morales v. City of Helena* (1977), 174 Mont. 237, 570 P.2d 887, it was not necessary for them to strictly comply with Rule 38, M.R.App.P., as long as the spirit and intent of the rule were met by their earlier filing of the constitutional challenge in the District Court. We do not find this argument persuasive as the *Morales* case was handed down 20 years prior to the 1997 amendment to Rule 38, M.R.App.P., that added the language requiring a notice of constitutional challenge to be filed *contemporaneously* with the filing of a notice appeal.

¶10    Moreover, in *Haider v. Frances Mahon Deaconess Hosp.*, 2000 MT 32, 298 Mont. 203, 994 P.2d 1121, the appellant filed its notice of appeal in that case on May 10, 1999, but did not file a notice challenging the constitutionality of the subject statute until August 5, 1999. We concluded that by failing to contemporaneously file its notice of constitutional challenge with its notice of appeal, the appellant failed to procedurally comply with an essential condition precedent, thus precluding this Court from reaching the constitutional challenge. *Haider,* ¶¶ 8, 12.

¶11    Similarly, in *Weinert v. City of Great Falls*, 2004 MT 168, 322 Mont. 38, 97 P.3d 1079, we determined that even though the appellant filed a notice with the Attorney General at the district court level as required by Rule 24(d), M.R.Civ.P., she failed to file a notice with this Court or with the Attorney General contemporaneously with her notice of appeal pursuant to Rule 38, M.R.App.P. *Weinert,* ¶ 13. Consequently, we held that because the

appellant in *Weinert* failed to comply with Rule 38, M.R.App.P., we would not address the constitutional challenge in that case since the State was not a party. *Weinert*, ¶ 17.

¶12    Accordingly, we hold that pursuant to Rule 38, M.R.App.P, we are precluded from reaching the constitutional issue if a notice of constitutional challenge is not filed contemporaneously with a notice of appeal when the State is not a party to the action or proceeding.

¶13    *Whether the MIGA is an agency of the State of Montana thereby obviating the need for the Boettchers to comply with Rule 38, M.R.App.P.*

¶14    The MIGA was created pursuant to Title 33, Chapter 10 of the Montana Code Annotated. Specifically, § 33-10-103, MCA, provides:

> **Creation of the association.** There is created a nonprofit unincorporated legal entity to be known as the Montana insurance guaranty association. All insurers defined as member insurers shall be and remain members of the association as a condition of their authority to transact insurance in this state. The association shall perform its functions under a plan of operation established and approved under 33-10-106 and shall exercise its powers through a board of directors established under 33-10-104.

Two members of the board of directors of the association established under § 33-10-104, MCA, are appointed by the Commissioner of Insurance of the State of Montana (*see* §§ 33-10-104 and 33-1-202(1), MCA).

¶15    In addition, § 33-10-101(2), MCA, provides that the purpose of the Montana Insurance Guaranty Association Act, pursuant to which the association is created, is:

> to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an

5

association to assess the cost of such protection among insurers.

¶16 The Boettchers argue that the MIGA is a State agency because it was created by the State, it is controlled by the State, it is regulated by the State, and it answers to the State. In support of their argument they cite to *Montana Health Care v. Bd. of Directors* (1993), 256 Mont. 146, 845 P.2d 113, and to *Howell v. State* (1994), 263 Mont. 275, 868 P.2d 568. Neither case actually addresses the issue of whether the MIGA is a State agency and we find no value in analogizing to either of these cases.

¶17 In *Montana Health Care*, we determined that the State Compensation Mutual Insurance Fund (the State Fund) was subject to the Montana Administrative Procedure Act (MAPA) and the Montana Public Participation and Open Meetings Act because § 39-71-2314(2), MCA (1991), specifically required that the State Fund was subject to the laws that applied generally to state agencies and was not exempt from laws that applied to state agencies unless that law specifically exempted the State Fund by name. *Montana Health Care*, 256 Mont. at 153, 845 P.2d at 117. Contrary to the Boettchers' implication, we did not determine in *Montana Health Care* that the State Fund was a state agency. If we had, we would have rendered § 39-71-2314(2), MCA, meaningless because, as a state agency, it would already be subject to the laws that applied to state agencies without having to legislatively or judicially say so.

¶18 In *Howell*, seed potato producers and their insurer brought suit seeking to have the State and its agent, the Montana Potato Improvement Association, pay for a judgment that had been entered against the producers. The State filed a third-party complaint against the

6

MIGA for indemnification of the settlement amount. We held on appeal that the MIGA was liable to the State. *Howell*, 263 Mont. at 288, 868 P.2d at 576.

¶19    The Boettchers argue that because the trial court found in *Howell* that the Montana Potato Improvement Association was an agent of the State, the MIGA must also be an agent of the State since it is a legislative creation like the Montana Potato Improvement Association. However, if the MIGA were a State agency, the State would in effect have sued itself in *Howell*, requesting indemnification and attorneys fees from itself.

¶20    As we noted above, the issue of whether the MIGA is an agency of the State of Montana is an issue of first impression in this State. Hence, we look to other jurisdictions that have ruled on this issue.

¶21    In *Kuvin, Klingensmith & Lewis, P.A. v. Florida Ins. Guaranty Asso., Inc.* (Fla. Dist. Ct. App. 1979), 371 So. 2d 214, the District Court of Appeal of Florida held that the Florida Insurance Guarantee Association (the FIGA) was not a governmental entity entitled to the venue privilege of being sued only at the site of its headquarters. *Kuvin*, 371 So. 2d at 216-17. In *Kuvin*, the Florida court went into detailed analysis regarding what constitutes a "governmental entity." It determined that the total noninvolvement of public funds was the most significant factor in the analysis indicating that the FIGA is not governmental in character. *Kuvin*, 371 So. 2d at 216.

¶22    As in *Kuvin*, the MIGA is funded wholly through an assessment made upon its member insurers. Section 33-10-116, MCA. No public funds are used to pay for obligations of the MIGA, the expenses of handling covered claims, the cost of examinations necessary

7

under § 33-10-108, MCA, or any other expenses authorized by the Montana Guaranty Association Act.

¶23 In *Iowa Ins. Guaranty Asso. v. New England Ins. Co.* (S.D. Iowa 1988), 701 F. Supp. 177, the United States District Court for the Southern District of Iowa held that the Iowa Insurance Guaranty Association (IIGA) was not a "state agency" for purposes of diversity jurisdiction. *Iowa Ins.*, 701 F. Supp. at 178-79. In *Iowa Ins.*, the court found that the IIGA's argument that it was an Iowa state agency unpersuasive and, instead, held that the IIGA is a citizen of each of the states of which one of its members is a citizen. *Iowa Ins.*, 701 F.Supp. at 179. In analyzing this issue, the Iowa court noted that the IIGA failed to point to, and the court was unable to find, a single case standing for the proposition that a state guaranty association is a state agency. *Iowa Ins.*, 701 F.Supp. at 178-79.

¶24 In *Greenfield v. Pennsylvania Ins. Guaranty Asso.* (Pa. Commw. Ct. 1976), 353 A.2d 918, 919, the Commonwealth Court of Pennsylvania held that the Pennsylvania Insurance Guaranty Association (PIGA) is not an agency of the Commonwealth within the meaning of a statue which gives that court original jurisdiction of civil actions or proceedings against the Commonwealth. The court in *Greenfield* noted, among other things, that the act establishing the PIGA does not state that it is an instrumentality of the Commonwealth or that it is funded by the Commonwealth. *Greenfield*, 353 A.2d at 919.

¶25 Similarly, the Montana act establishing the MIGA does not state that the MIGA is a state agency. And, as we have already determined herein, the MIGA is funded entirely by an assessment upon its members and not by the State. Section 33-10-116, MCA.

8

¶26 In *Muschette v. Gateway Ins. Co.* (N.J. Super. Ct. App. Div. 1977), 373 A.2d 406, 409, the Superior Court of New Jersey, Appellate Division, held that the New Jersey Insurance Guaranty Association (NJIGA) was not a "public entity" for purposes of precluding an award of interest on a judgment entered against the insolvent insurer. In *Muschette*, the NJIGA argued that an award of interest was precluded by a state statute disallowing interest prior to the entry of a judgment against a "public entity." *Muschette*, 373 A.2d at 409. The court in that case held that, pursuant to New Jersey's statutes, the NJIGA clearly was not a public entity, but rather, a "private nonprofit unincorporated legal entity." *Muschette*, 373 A.2d at 409.

¶27 Similarly, the Montana Guaranty Association Act defines the MIGA as a "nonprofit unincorporated legal entity" and not as a public agency. Section 33-10-103, MCA.

¶28 Finally, in *Minn. Ins. Guar. Ass'n v. Integra Telecom, Inc.* (Minn. Ct. App. 2005), 697 N.W.2d 223, 231, the Minnesota Court of Appeals determined that the Minnesota Insurance Guaranty Association (Minnesota IGA) is not a state agency, but rather, an unincorporated organization formed of insurers who transact business in Minnesota. Consequently, the court in that case determined that because the Minnesota IGA is not a state agency, appellant's failure to timely notify that state's attorney general of its constitutional challenge precluded the Minnesota Court of Appeals from considering the issue.

¶29 Based on all of the foregoing, we hold that the MIGA is not a state agency for purposes of Rule 38, M.R.App.P. Consequently, the Boettchers were required to comply with that Rule and file their Notice of Constitutional Challenge contemporaneously with the

9

filing of their Notice of Appeal.  Having failed to do so, we hold that their Notice of Constitutional Challenge is untimely.  Therefore,

¶30    IT IS ORDERED that the MGF's motion to strike the Notice of Constitutional Challenge is GRANTED.

¶31    IT IS FURTHER ORDERED that the Clerk of this Court give notice of this Opinion and Order by mail to counsel of record for the parties.

DATED this 6th day of June, 2006.

/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ BRIAN MORRIS
/S/ JOHN WARNER